UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD L. KING II, | ) | CASE NO. 5:20-cv-00571 |
| | ) | |
| *On behalf of himself and all others similarly situated,* | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| Plaintiff, | ) | THOMAS M. PARKER |
| | ) | |
| *v.* | ) | |
| | ) | |
| BAILEY'S QUALITY PLUMBING AND HEATING LLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

The Parties respectfully and jointly move the Court to approve the proposed Settlement reached by the Parties and memorialized in the *Agreement of Settlement and Release* ("Settlement Agreement") attached as Exhibit 1. The Settlement seeks to resolve all wage-and-hour claims of the Named Plaintiff and Opt-In Plaintiffs (also collectively referred to as "Plaintiffs") that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and Opt-In Plaintiffs who submit a consent form pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), representing a substantial percentage of the potential value of their claims. The Parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

Exhibit 1:     *Agreement of Settlement and Release* ("Settlement Agreement");

Exhibit 2:     Proposed Final Order and Judgment Approving Settlement
               and Dismissing Action;

Exhibit 3:     Exhibit A to Settlement Agreement –
               Notice to Potential Opt-In Plaintiffs ("Notice");

Exhibit 4:     Exhibit B to Settlement Agreement –
               Consent to Join Claim Form & Release ("Consent Form");

Exhibit 5:     Exhibit C to Settlement Agreement –
               Individual Payments Allocation Schedule; and

Exhibit 6:     Declaration of Plaintiffs' Counsel.

The attached Memorandum in Support explains the nature of the Action, the negotiations,

the principal terms of the Settlement, and the propriety of approving the Settlement and its

proposed distributions of settlement proceeds.

Respectfully submitted,

| | |
|---|---|
| *s/ Ryan A. Winters* | *s/ Jazmyn J. Stover     (via email consent)* |
| Joseph F. Scott (0029780) | Jazmyn J. Stover (0085580) |
| Ryan A. Winters (0086917) | Scott W. Gedeon (0077634) |
| Kevin M. McDermott II (0090455) | Lauren Tompkins (0087304) |
| SCOTT & WINTERS LAW FIRM, LLC | FISHER & PHILLIPS LLP |
| The Caxton Building | 200 Public Square, Suite 4000 |
| 812 Huron Rd. E., Suite 490 | Cleveland, Ohio 44114 |
| Cleveland, OH 44115 | (440) 838-8800 – Telephone |
| P: (216) 912-2221   F: (216) 350-6313 | (440) 838-8805 – Facsimile |
| jscott@ohiowagelawyers.com | smoore@fisherphillips.com |
| rwinters@ohiowagelawyers.com | sgedeon@fisherphillips.com |
| kmcdermott@ohiowagelawyers.com | ltompkins@fisherphillips.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

ii

## <u>TABLE OF CONTENTS</u>

**Table Of Authorities** ........................................................................................................ iv

**Memorandum In Support** ................................................................................................ 1

**I.**     **The Litigation** .......................................................................................... 1

      **A.**    **Facts and Procedural History** ...................................................... 1

      **B.**    **Discovery and Document Analysis** ............................................ 4

**II.**    **The Negotiations** ..................................................................................... 5

**III.**   **The Terms of the Settlement and Release of Claims** ............................ 5

      **A.**    **The Scope of Settlement** ............................................................. 5

      **B.**    **The Settlement Payments and Distributions** ............................ 6

**IV.**   **The Propriety of Approval** .................................................................... 8

      **A.**    **The Seven-Factor Standard is Satisfied** ................................... 8

      **B.**    **The Settlement Payments Are Fair, Reasonable, and Adequate** ................... 12

      **C.**    **The Service Award to the Named Plaintiff is Proper and Reasonable** .......... 12

      **D.**    **Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable** .......... 14

**V.**     **Conclusion** ............................................................................................. 18

**Certificate of Service** ...................................................................................................... 20

**Certificate of Compliance with Page Limitation Requirements** ............................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343 (6th Cir.2000) .................................................. 15

*Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist.
    LEXIS 199053 (Nov. 18, 2019)....................................................................................... 13

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................ 15

*Carter v. Hickory Healthcare, Inc.*, 905 F.3d 963 (6th Cir. 2018) ............................................. 15

*Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS
    169237 (Oct. 4, 2017) ...................................................................................................... 9

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ............................................... 13

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010) ................................................ 9

*Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist.
    LEXIS 20446 (Mar. 8, 2010) .......................................................................................... 13

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) ................................................................... 14, 15

*Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020) ........................................................ 15

*Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334 (Sep.
    23, 2019) ........................................................................................................................ 15

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir.2004)....................................................................... 15

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS
    67887, 2011 WL 2532922 (June 24, 2011) .................................................................... 10

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992) ......................................... 10

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ........................................................ 11

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ......................... 15

*Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS
    182622 (Oct. 22, 2019) .................................................................................................... 9

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ...................................... 11

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio
    1990) .............................................................................................................................. 13

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ........................... 13

*Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782
(N.D.Ohio Jan. 26, 2017) ................................................................................................ 9

*Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019
U.S. Dist. LEXIS 213145 (Dec. 9, 2019) ....................................................................... 18

*King v. Bailey's Quality Plumbing & Heating LLC*, N.D.Ohio No. 5:20-cv-00571, 2021
U.S. Dist. LEXIS 45785 (Mar. 11, 2021) ................................................................. 2, 17

*Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June
16, 2008) .......................................................................................................................... 8

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) .................................. 8

*Monroe v. FTS USA, LLC*, 6th Cir. No. 20-6289/6347, 2021 U.S. App. LEXIS 33235
(Nov. 8, 2021) ................................................................................................................ 15

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .......................................................................... 12

*Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222
(N.D.Ohio May 4, 2018) ............................................................................................ 9, 13

*Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL
398146 (N.D. Ohio August 22, 2008) ............................................................................ 10

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 2008) .............................................................................. 14

*Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613 (6th Cir.2021) ..................... 15

*Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722 (Apr. 30, 2018) ........ 18

*Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL,
2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018) ............................................................... 13

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS
35584 (Mar. 13, 2017) ............................................................................................... 9, 11

*Smyers v. Ohio Mulch Supply Inc*., 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App.
LEXIS 19634 (July 1, 2021) .......................................................................................... 16

*Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist.
LEXIS 177517 (Dec. 29, 2014) ....................................................................................... 9

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local
307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495 (6th Cir.1984) ..................... 14

*Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist.
LEXIS 142325 (W.D. Ky. Oct. 13, 2016) ...................................................................... 18

## Statutes

29 U.S.C. § 201 ............................................................................................................... 1

29 U.S.C. § 207 ............................................................................................................... 3

29 U.S.C. § 215 ........................................................................................................... 1, 3

O.R.C. § 4111.01 ............................................................................................................ 1

O.R.C. § 4111.03 ............................................................................................................ 3

O.R.C. § 4111.10 ........................................................................................................ 3, 14

## Regulations

29 C.F.R. § 785.38 .......................................................................................................... 3

## Constitutional Provisions

Ohio Const. Art. II, Sec. 34a............................................................................................ 1

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    <u>THE LITIGATION</u>**

   **A.  Facts and Procedural History**

   Named Plaintiff Richard L. King II filed Case No. 5:20-cv-00571 *on behalf of himself and all others similarly situated* on March 16, 2020 seeking relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq.*, and Ohio Const. Art. II, Sec. 34a. (ECF No. 1.) Plaintiff's Complaint alleged that Defendants Bailey's Quality Plumbing and Heating LLC and Philip Lee Bailey violated the FLSA and Ohio law by failing to pay overtime compensation to Plaintiff King and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. (*Id.* at PageID# 4-7, ¶¶ 19-29.) Defendants filed an Answer, denying all liability under any of Plaintiff's claims. (*See* ECF No. 6.)

   On January 11, 2021, Plaintiff King filed Plaintiff's Motion for Leave to File Instanter First Amended Complaint. (ECF No. 14.) The Court granted Plaintiff's Motion for Leave on February 1, 2021. (Feb. 1, 2021 Order [non-document].) Plaintiff's First Amended Complaint (ECF No. 17) sets forth four separate counts as follows:

- Count I— a claim for violation of the FLSA's wage provisions, 29 U.S.C. §§ 201-219;

- Count II— a claim for violation of Ohio's wage laws, Ohio Rev. Code §§ 4111.01, *et seq.*;

- Count III— a claim for violation of the FLSA's anti-retaliation provisions, 29 U.S.C. § 215(a)(3); and

- Count IV— a conversion/retaliation claim relating to Defendants' alleged taking and conversion of Plaintiff Richard King's property.

On April 29, 2020, Plaintiff King filed Plaintiff's Motion for Conditional Certification, Opt-In Identification Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). (ECF No. 9.) Defendants opposed the Motion for Conditional Certification (ECF No. 11), and Plaintiff filed a reply (ECF No. 12). Defendants filed a Supplemental Brief in Opposition (ECF No. 18), and Plaintiff King filed his response to Defendants' Supplemental Brief on February 23, 2021 (ECF No. 20). On March 11, 2021, the Court granted in part Plaintiff's Motion for Conditional Certification with changes as to the proposed notice documents. (ECF No. 21); *see King v. Bailey's Quality Plumbing & Heating LLC*, N.D.Ohio No. 5:20-cv-00571, 2021 U.S. Dist. LEXIS 45785 (Mar. 11, 2021).

Defendants are owners and operators of a plumbing and heating company operating out of 3200 Lee Road, North Canton, Ohio 44720. Named Plaintiff Richard King was employed by Bailey's Quality Plumbing from approximately January 2018 to about March 29, 2020 as an hourly plumber. Defendants utilize hourly plumbing employees and employees with similar job titles or duties (including plumbing helpers, apprentices, and laborers) (referred to herein as "plumbing employees"), including Plaintiff King and other members of the FLSA Collective, to provide these and related plumbing services. As alleged in the First Amended Complaint, Defendants' plumbing employees worked at jobsites throughout Northern Ohio. Defendants' plumbing employees were required to drive and report back to the North Canton, Ohio shop at the end of the workday. Plaintiff alleged that Defendants were required to pay Plaintiff and other plumbing employees this required travel time from the last jobsite to the shop – Bailey's Plumbing's business premises. However, Plaintiff alleged, they did not. Plaintiff argued that Defendants' alleged policy and practice of failing to pay overtime when their plumbing employees were required to travel back to the shop at the end of the workday was a facial

violation of the FLSA, 29 U.S.C. § 207(a), 29 C.F.R. § 785.38. From Plaintiff's perspective, this is a violation "regardless of [any] contract, custom, or practice." *Id.* Plaintiff's demand pertaining to the overtime back wage component of the travel time claims of Plaintiff and other members of the FLSA Collective was $43,742.06. In addition, the First Amended Complaint alleged a retaliation claim pursuant to 29 U.S.C. § 215(a)(3). (ECF No. 17, PageID# 164-66.)  Plaintiff King further brought an individual conversion/retaliation claim pertaining to Plaintiff King's tools and equipment. (*Id.* at PageID# 166.)

Defendants hotly disputed whether plumbing employees were underpaid, and whether Plaintiff King suffered any retaliation or lost tools that were not returned by Defendants. While Plaintiff contends that by not paying travel time Defendants failed to pay compensation to their plumbing employees at the rate of one and one-half times their regular rate for the hours they worked in excess of forty (40) as required by 29 U.S.C. § 207 and O.R.C. §§ 4111.03, 4111.10, Defendants, on the other hand, argue plumbing employees traveled short distances and that therefore any overtime compensation owed was minimal.

Obtaining the alleged unpaid wages at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiffs would need to: (1) convince the Court that the overtime claims should proceed to trial on a collective basis under 29 U.S.C. § 216(b); (2) prove that each plumbing employee performed unpaid overtime hours each workweek, in addition to the amounts of these times, and defeat Defendants' argument that the times and amounts of overtime hours Plaintiffs allege, both with regard to frequency and duration, are an exaggeration that cannot be supported with admissible evidence; (3) defeat Defendants' legal and factual arguments that any violation was not willful and that Defendants are entitled to a good faith defense; (4) defeat Defendants' argument that they had a non-pretextual reason to not call

Plaintiff King back to work; and (5) prove the quantity and value of the alleged tools Plaintiff King claims Defendants allegedly did not return.

### B.  Discovery and Document Analysis

The Parties engaged in discovery, and Defendants produced voluminous wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Plaintiffs. Prior to engaging in settlement negotiations, Defendants provided wage and hour data in the form of approximately 980 pages of PDF documents containing timekeeping, job identification, and payroll and payment information for all potential opt-in plumbing employees. Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Counsel meticulously used Google Maps' departure time function to determine the approximate travel time required from the first suggested route for a majority of the thousands of days worked. For days where the location search provided no cognizable result (approximately 39% of all entries) or the ending location was not provided or unascertainable (such as, e.g., entries that simply said "estate," "Sheetz," or "125 East"), Plaintiffs' Counsel used estimated averages from the prior data obtained, and Plaintiff King provided a reasonable estimate of the travel time required on a location-by-location basis.

Plaintiff's damages computation considered thousands of data points and permitted a precise calculation of the alleged unpaid wages for all plumbing employees. Based on Plaintiff's analysis, in a best-case scenario, Plaintiff and other plumbing employees were entitled to $43,742.06 in back overtime wages. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.    THE NEGOTIATIONS

Settlement negotiations were contentious. In advance of the mediation, the Parties

prepared and submitted comprehensive mediation memoranda demands and responses

addressing merits and damages issues. A mediation with Honorable Magistrate Judge Thomas

M. Parker, a very seasoned and experienced jurist and mediator, commenced on December 2,

2021. The mediation resulted in a global settlement encompassing all issues, subject to approval

by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the

attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel.

(*See* Decl. of Counsel, Ex. 6.) Formal settlement documents, including the Settlement Agreement

attached as Exhibit 1, were later prepared and executed for approval by the Court.

## III.    THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.    The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve deeply disputed claims

between the Parties. The Settlement will resolve wage-and-hour claims of the Named Plaintiff

and all other Opt-In Plaintiffs who affirmatively agree to be bound by the Settlement by signing

and returning the Consent Form attached as Exhibit B to the Settlement Agreement. As

highlighted below, Plaintiffs' Counsel and Defendants' Counsel believe that certification and

Settlement are appropriate because the Released Claims are being compromised without the need

to establish the elements of those claims on which liability turns, in addition to providing a

substantial recovery to Plaintiffs in light of the procedural and substantive encumbrances

underscored by Defendants. Named Plaintiff and Plaintiffs' Counsel believe the claims asserted

in the matter have merit and that the evidence developed to-date supports the claims asserted.

(*See* Exs. 1, 6.) Named Plaintiff and Plaintiffs' Counsel, however, also recognize the risk and

expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Plaintiffs. (*Id*.)

## B. __The Settlement Payments and Distributions__

__Total Settlement Amount.__ Defendants have agreed to pay the maximum settlement amount of $140,000.00 as set forth in the Settlement Agreement. (Ex. 1 at 5, ¶ 3.) That sum will be used to make settlement payments to the Named Plaintiff and other Opt-In Plaintiffs who submit a consent form pursuant to the FLSA, 29 U.S.C. § 216(b), which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiffs; (2) attorneys' fees and reimbursed litigation expenses; (3) service award; and (4) any other obligations of Defendants under the Settlement Agreement.

__Payments to Opt-In Plaintiffs.__ From the total settlement amount, the maximum amount of $65,000.00 will be paid to the Opt-In Plaintiffs, including the Named Plaintiff who previously submitted a consent form pursuant to the FLSA, 29 U.S.C. § 216(b). The proposed method of allocating the class payments is reasonable and fair to all. Payments to Opt-In Plaintiffs are based on each Opt-In Plaintiff's calculated unpaid overtime travel time hours during the settlement period, March 16, 2018 to September 1, 2021. As noted above, counsel meticulously used Google Maps' departure time function to determine the approximate travel time required from the first suggested route for a majority of the thousands of days worked. For days where the location search provided no cognizable result (approximately 39% of all entries) or the ending location was not provided or unascertainable (such as, e.g., entries that simply said "estate," "Sheetz," or "125 East"), Plaintiffs' Counsel used estimated averages from the prior data obtained, and Plaintiff King provided a reasonable estimate of the travel time required on a location-by-location basis.

6

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims, and achieves an excellent result for the covered plumbing employees. To the extent they decide to opt-into the matter, each of the 13 plumbing employees will receive approximately 149% of their calculated overtime back wages. Inherent in the proposed distribution method in which Opt-In Plaintiffs are distributed settlement payments based proportionally on each Plaintiffs' calculated overtime damages during the relevant period, the settlement proposal treats Opt-In Plaintiffs equitably relative to each other. Named Plaintiff King, as an Opt-In Plaintiff, will participate in the recovery under the same procedure applicable to other Plaintiffs.

**Service Award.** The proposed Settlement provides for an individual service award to Named Plaintiff King in the amount of $5,000 in recognition of his assistance to Plaintiffs' Counsel and his direct contributions to achieving the Settlement on behalf of all Opt-Ins. The proposed service award is well-earned. Among other things, Plaintiff King consulted with Plaintiffs' Counsel at critical stages, attended the mediation, and provided important and necessary documents and information throughout the course of the litigation. Plaintiff King's contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $65,000.00. After reductions for costs and litigation expenses in the total amount of $497.00, the attorney fee recovery will equal $64,503.00. (*See, e.g.,* Ex. 6, Decl. of R. Winters at ¶¶ 33, 40-50.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs'

Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs'

Counsel will not be paid by Defendants until after the final approval order is issued by the Court,

contemporaneously along with the settlement payments to Named Plaintiff and other Opt-Ins.

(*See* Settlement Agreement at 7-9, ¶¶ 8-11.)

**Payment Pertaining to Plaintiff King's Conversion Claim**. From the Total Settlement

Amount, Named Plaintiff King will receive $5,000.00 pertaining to Plaintiff King's conversion

claim. The First Amended Complaint included a claim for conversion/retaliation pertaining to

Plaintiff King's tools and equipment allegedly last known to be in Defendants' possession.

During mediation, Plaintiff provided a list of tools that he alleged Defendants did not return and

a spreadsheet cataloguing the summary replacement cost of the tools and equipment. Plaintiff's

demand pertaining to this conversion/ portion of his retaliation claim was $5,497.72, and the

Parties agreed to settle this claim for a discounted $5,000.00.

## IV.   THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the

FLSA. As shown below, Court approval here is strongly supported by established authority.

### A.  The Seven-Factor Standard is Satisfied

This Settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b). The

court presiding over an FLSA action may approve a proposed settlement of the action under §

216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents.,* S.D.Ohio No.

C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2-3 (June 16, 2008), fn. 1 (quoting *Lynn's Food

Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should

determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"));

*Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622, at

*2 (Oct. 22, 2019); *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist.

LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC*,

S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (May 30, 2012); *Osman v.

Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio

May 4, 2018).

In *Hill*, 2019 U.S. Dist. LEXIS 182622, at *2, a court within this district and division

used seven factors to evaluate whether the proposed settlement was fair and reasonable for

purposes of the FLSA, 29 U.S.C. § 216(b):

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the
> complexity, expense, and likely duration of the litigation; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the probability of
> plaintiff's success on the merits; (5) the range of possible recovery; and (6) the
> opinions of the counsel.

(Citing *Snook v. Valley OB-GYN Clinic, P.C.*, E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist.

LEXIS 177517, at *3 (Dec. 29, 2014), citing *Dees v. Hydradry, Inc*., 706 F. Supp. 2d 1227, 1241

(M.D. Fla. 2010)). *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343,

2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) ("the risk of fraud or collusion, the

complexity, expense, and likely duration of the litigation, the amount of discovery engaged in,

the likelihood of success on the merits, and the public interest in settlement.") (citing *Crawford

v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070,

2008 WL 4724499, at *3 (Oct. 23, 2008) (further citation omitted)). "The court may choose to

consider only factors that are relevant to the settlement at hand and may weigh particular factors

according to the demands of the case." *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No.

1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017) (quoting *Gentrup v. Renovo

Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at * 3

(June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *14 (quoting *Redington v.*
*Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D.
Ohio August 22, 2008), citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206
(6th Cir.1992)).

  A key factor – the likelihood of success on the merits balanced against the amount and
form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and
uncertain, and Plaintiffs would have to establish not only Defendants' liability, which
Defendants vehemently deny, but also each plumbing employee's travel time overtime damages.
Of particular contention in this specific case is the factual and legal dispute as to whether the
covered workers performed overtime hours each workweek, in addition to the amounts of these
times. Defendants argued that the times and amounts of overtime hours Plaintiffs allege, both
with regard to frequency and duration, are an exaggeration that cannot be supported with
admissible evidence; that Defendants' likelihood of success in defending against Plaintiff King's
retaliation claim to be high; that members of the FLSA Collective were properly paid overtime
compensation and that any potential damages to be minimum. Defendants further aggressively
argued that, even if Plaintiffs prevail on the substantive elements of their claims, any violation
was not willful and that Defendants are entitled to a good faith defense. The outcome of
litigating the case would be uncertain, and the risks of continued litigation would be high. In
contrast, the Settlement assures that the Opt-In Plaintiffs will receive significant compensation.
Given the uncertainties surrounding trial in this matter, the certainty and finality of a settlement
that will substantially benefit the Plaintiffs is in the public interest. *See Kritzer*, 2012 U.S. Dist.
LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and
protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D.

Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Given that the

factual and legal issues in this case are highly disputed and complex, there is no guarantee that

Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the

Settlement assures that the Plaintiffs will receive significant compensation. The proposed

Settlement will eliminate the risk and delay of litigation and make substantial payments available

to the Plaintiffs to this action.

The other factors are satisfied as well. Wage-and-hour cases for groups of employees are

always expensive and time-consuming and the expense and likely duration of continued

litigation favor approval. The Parties engaged in substantial document review, comprehensive

payroll and timekeeping records analysis, and due diligence prior to arduous negotiations, and

the issues were well understood – as noted above, the Parties conducted a comprehensive

investigation, including an extensive analysis of the wage-and-hour information and data and

documents, including a computational methodology that considers approximately 25,300 data

points and permits a calculation of the alleged unpaid wages for all covered plumbing

employees. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no

fraud or collusion. The settlement was reached as a result of arms-length negotiation between

Parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5.

As noted above, to the extent they decide to opt-into the matter, each of the covered 13 plumbing

employees will receive approximately 149% of their calculated overtime back wages. (*See* Exs.

1, 6.) Prior to mediation, Plaintiff's demand pertaining to the overtime back wage component of

the travel time claims of Plaintiff and other members of the FLSA Collective was $43,742.06;

however, after the payment of attorney fees and all other litigation costs and expenses, the

amount of $65,000.00 will be paid to the Opt-In Plaintiffs as distributed in the Individual

Allocation Schedule attached as Exhibit C to the Settlement Agreement. (See Ex. 5.) Inherent in the proposed distribution method in which Opt-In Plaintiffs are distributed settlement payments based proportionally on each Plaintiffs' calculated overtime damages during the relevant period, the settlement proposal treats Opt-In Plaintiffs equitably relative to each other. Named Plaintiff King, as an Opt-In Plaintiff, will participate in the recovery under the same procedure applicable to other Plaintiffs.

### B.  The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

In the present case, the Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents, including a computational methodology that considers approximately 25,300 data points and permits a calculation of the alleged travel time unpaid wages for all plumbing employees based off the actual timekeeping and payroll data as produced by Defendants. To the extent they decide to opt-into the matter, each of the 13 plumbing employees will receive approximately 149% of their calculated overtime back wages. This method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the actual amounts of the Plaintiffs' time worked and potential damages.

### C.  The Service Award to the Named Plaintiff is Proper and Reasonable

A reasonable service award properly recognizes the named/representative plaintiffs' services on behalf of other beneficiaries of the settlement and their contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

In this Circuit, service awards are "justified where the named plaintiffs expend time and effort beyond that of the other class members … by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (approving $7,500 service award to named plaintiff); *see Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at *4 (Nov. 18, 2019) (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff).

Indeed, the Named Plaintiff King incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Among other things, Plaintiff King consulted with Plaintiffs' Counsel at critical stages; helped Counsel prepare for mediation and

13

attended the mediation; and provided and reviewed other important documents and information throughout the course of the litigation. Plaintiff King further filed a retaliation claim in which he alleged that his participation in this matter as Plaintiff was the reason for his dismissal and the ultimate loss of his tools and equipment. Furthermore, Plaintiff King faithfully represented the interests of the Plaintiffs and ably assisted Plaintiffs' Counsel. His contribution was instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $5,000.00 to Plaintiff King is reasonable and well-earned.

### D.  Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.,* 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 (May 30, 2012) (the fee award must be "adequate to attract competent counsel but … not produce a windfall") (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897

14

(1984)). "In determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc*., S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at \*5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id*. (citing *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

Recently, in *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-617 (6th Cir.2021) the Sixth Circuit ordered attorney fees to be calculated based on the lodestar attorneys' fees request, as opposed to a percentage of the total recovery, noting that:

> "Neither the text nor the purpose" of the FLSA "supports imposing a proportionality limit on recoverable attorneys' fees." The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them.

*Id.* at 616-617 (quoting *Fisher v. SD Protection Inc*., 948 F.3d 593, 603 (2d Cir. 2020); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004)). Moreover, "[i]n determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Monroe v. FTS USA, LLC*, 6th Cir. No. 20-6289/6347, 2021 U.S. App. LEXIS 33235, at \*18 (Nov. 8, 2021) (quoting *Rembert*, 986 F.3d at 618, quoting *Carter v. Hickory Healthcare, Inc*., 905 F.3d 963, 970 (6th Cir. 2018)). *See also Smyers v. Ohio Mulch Supply Inc*.,

15

6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App. LEXIS 19634, at *5-6 (July 1, 2021) (district court abused its discretion by reducing the parties' agreed-to fees payment calculated under the lodestar method to one-third of the total settlement amount).

In the present case, the efforts of Plaintiffs' Counsel resulted in proposed settlement payments to the Named Plaintiff and Settlement Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims - approximately 149% of the back overtime wage damages calculated for the participating Named Plaintiff and Settlement Opt-In Plaintiffs at mediation. The proposed payments to Named Plaintiff and Settlement Opt-In Plaintiffs – set forth in the Individual Payments Allocation Schedule (Ex. 5) – are shared among the Named Plaintiff and Settlement Opt-In Plaintiffs based on their individual calculated damages. Moreover, the proposed payment to Plaintiffs' Counsel represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 6.

Prosecuting complex litigation on a collective class basis is always difficult and time-consuming. The tasks required of Plaintiffs' Counsel in this case included pre-litigation investigation of Plaintiff's claims and the identities of potential corporate defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as drafting Plaintiff's Rule 26 Disclosures.

The post-pleading activities of Plaintiffs' Counsel in this matter were significant. On April 29, 2020, Plaintiff Richard L. King III filed Plaintiff's Motion for Conditional Certification, Opt-In Identification Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). (ECF No. 9.) Defendants opposed the Motion for

Conditional Certification (ECF No. 11), and Plaintiff filed a reply (ECF No. 12). Defendants further filed a Supplemental Brief in Opposition (ECF No. 18), and Plaintiff King filed his response to Defendants' Supplemental Brief on February 23, 2021 (ECF No. 20). On March 11, 2021, the Court granted Plaintiff's Motion for Conditional Certification with changes as to the proposed notice documents. (ECF No. 21); *see King*, 2021 U.S. Dist. LEXIS 45785.

In addition, on January 11, 2021, Plaintiff King filed Plaintiff's Motion for Leave to File Instanter First Amended Complaint. (ECF No. 14.) Defendants did not agree to stipulate to Plaintiff's filing, and Plaintiff therefore filed the comprehensive motion as if it were contested by Defendants. The Court granted Plaintiff's Motion for Leave on February 1, 2021. (Feb. 1, 2021 Order [non-document].)

Plaintiffs' Counsel further drafted Plaintiff's First Set of Discovery Requests to Defendants. In response, Defendants did not produce hourly timekeeping records for workers pertaining to the end-of-day travel time for which they were allegedly not paid. Defendants also did not produce timekeeping and payroll records in an Excel format or, if unavailable, another useable electronic form. Therefore, Plaintiffs' Counsel meticulously used Google Maps' departure time function to determine the approximate travel time required from the first suggested route for a majority of the thousands of days worked. For days where the location search provided no cognizable result (approximately 39% of all entries) or the ending location was not provided or unascertainable (such as, e.g., entries that simply said "estate," "Sheetz," or "125 East"), Plaintiff used estimated averages from the prior data obtained, and Plaintiff King provided a reasonable estimate of the travel time required on a location-by-location basis. This data analysis required significant attorney time.

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named Plaintiff and Settlement Opt-In Plaintiffs – approximately 149% of their calculated overtime back wages at mediation. As of December 27, 2021, at a combined fee lodestar of $78,822.50 the requested attorney fee of $64,503.00 (after deduction of $497.00 in litigation costs and expenses borne by Plaintiffs' Counsel), results in a "negative multiplier" if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 6 ¶ 47.) Such a negative multiplier supports that the fee sought is reasonable. *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019); *Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A*., Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)). In other words, while Named Plaintiff and Settlement Opt-In Plaintiffs will recover approximately 149% of their calculated wage damages, Plaintiff's counsel has agreed to recover a reduced amount – approximately 82% – of their lodestar attorney fees incurred to date. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

In addition, the payment of attorney fees and costs includes $497.00 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 6 ¶ 50.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.     <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully submitted,

| | |
|---|---|
| *s/ Ryan A. Winters* | *s/ Jazmyn J. Stover  (via email consent)* |
| Joseph F. Scott (0029780) | Jazmyn J. Stover (0085580) |
| Ryan A. Winters (0086917) | Scott W. Gedeon (0077634) |
| Kevin M. McDermott II (0090455) | Lauren Tompkins (0087304) |
| SCOTT & WINTERS LAW FIRM, LLC | FISHER & PHILLIPS LLP |
| The Caxton Building | 200 Public Square, Suite 4000 |
| 812 Huron Rd. E., Suite 490 | Cleveland, Ohio 44114 |
| Cleveland, OH 44115 | (440) 838-8800 – Telephone |
| P: (216) 912-2221   F: (216) 350-6313 | (440) 838-8805 – Facsimile |
| jscott@ohiowagelawyers.com | smoore@fisherphillips.com |
| rwinters@ohiowagelawyers.com | sgedeon@fisherphillips.com |
| kmcdermott@ohiowagelawyers.com | ltompkins@fisherphillips.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all Parties

indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS

I, undersigned counsel, state that this matter has been assigned to the standard track, and I

hereby certify that the memorandum contained herein complies with the page limitations established

by Local Rule 7.1(f) as a dispositive motion "which, if granted, would result in the entry of

judgment or dismissal, or would dispose of any claims or defenses, or would terminate the

litigation." *See* LR 16.1(b)(5).

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)